# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>**SHARLENE SANBORN,**<br>                    **Debtor**<br><br>―――――――――――――<br><br>**SHARLENE SANBORN,**<br>                    **Plaintiff**<br>**v.**<br>**EDUCATIONAL CREDIT MANAGEMENT CORPORATION,**<br>                    **Defendant** | Chapter 7<br>Case No. 06-10596-FJB<br><br><br><br><br><br>Adversary Proceeding<br>No. 08-1224 |

## MEMORANDUM OF DECISION

By her complaint in this adversary proceeding, the Chapter 7 debtor, Sharlene Sanborn ("the Debtor"), seeks a declaration that her obligation on a student loan that is currently held by Educational Credit Management Corporation ("ECMC" or the "Lender") is dischargeable under 11 U.S.C. § 523(a)(8) on the basis that failure to discharge this obligation would impose on her and her dependents an undue hardship. Having now tried the matter and for the reasons stated below, the Court finds that the Debtor has failed to carry her burden of establishing that repayment of her student loan would impose an undue hardship.

## FACTS ESTABLISHED AT TRIAL

The Debtor, appearing pro se, presented two witnesses at the trial. She offered the testimony of her treating physician, Dr. Donna Felsenstein, and she testified on her own behalf. In addition, she offered her answers to interrogatories dated February 16, 2009, which were admitted into evidence. For its case, ECMC examined the Debtor's witnesses and offered six

documentary exhibits, all of which were admitted without objection. From this evidence, the following facts emerge.

The Debtor is a thirty-six year old unmarried woman who resides with her nine year old son in a rented apartment. She incurred the educational loan debt at issue when she attended the New England Institute of Art, where she received an associate degree in the Science of Radio Broadcasting, and The Bryman Institute, where she obtained a Certificate in Medical Assistance with honors. She obtained the former degree in 2000 and the latter in 2004.

The Debtor is indebted to ECMC on one consolidated federal student loan in the original amount of $23,898.46 (the "Student Loan"). The Student Loan has a fixed rate of interest of 3.375% and a per diem of $2.47. As of January 4, 2010, the amount due on the Student Loan was $27,674.

The Debtor is currently unemployed and has been since the latter half of 2006, but after her graduation from The Bryman Institute in 2004, she worked in the medical field fairly steadily for approximately two years. She last worked at the Boston Medical Center's Greater Roslindale Medical Center as a medical assistant at the rate of $16.00 per hour; that was in the first half of 2006. In October and November 2005, the Debtor worked as a medical assistant at the West Roxbury Medical Group at the rate of $14.50 per hour; and in 2004 and early 2005 she worked as a pharmacy technician at CVS Pharmacy at the rate of $11.00 per hour. Immediately after graduating from The Bryman Institute, the Debtor worked at Harvard Vanguard Medical Associates as a medical assistant.

The Debtor's current monthly income consists of $724 in Social Security disability benefits, $99 in food stamp benefits, and $388 from Massachusetts Transitional Assistance for her son. Her total monthly household income is thus $1,211.

The Debtor identifies essentially two reasons that she cannot work: that she suffers from a debilitating medical condition that leaves her unable to work; and that she is a single parent to a nine year old son, and her income, even before her illness, was insufficient to permit

payments on the loan.

The Debtor is disabled in that she suffers from Chronic Fatigue Syndrome/Myalgic Encephalomyelitis ("CFS/ME"). She claims that these conditions are permanent, but also that the symptoms associated with them vary considerably. She also reports that there are drug therapies that may mediate the severity of her symptoms. She has received medical evaluation and treatments for these illnesses and has been eligible for public health insurance under the Mass Health program.

Dr. Felsenstein provided medical testimony regarding the Debtor. She is an attending physician in the infectious disease department at Massachusetts General Hospital and has been treating the Debtor since December 2006. In June 2008, Dr. Felsenstein diagnosed the Debtor as suffering from CFS/ME. She testified that this disorder is not subject to an objective test. It can be diagnosed only by ruling out other causes for the symptoms that the patient exhibits. Nonetheless she testified that the Debtor's history and symptoms were consistent with a diagnosis of CFS/ME. Those symptoms include flu-like symptoms, muscle aches, joint pains, cognitive difficulties, concentration difficulties, post-exertional malaise, and memory loss. Asked her opinion of the Debtor's ability to work, Dr. Felsenstein testified that the Debtor was "relatively disabled" and that "it would be difficult for her to maintain a job." With regard to her prognosis, the doctor testified that "it's very difficult to know how someone will do over time. Some people do get better. Some people sort of wax and wane in their symptoms with good periods and bad periods." On cross-examination, the doctor stated that there were some medications that she had recommended to the Debtor, but that the Debtor preferred not to take those medications. The doctor also stated that these medications do not cure the illness; they merely alleviate some of the symptoms and can make it possible for some patients to work. It is impossible to know whether and to what extent these might enable the Debtor to return to work. The Debtor explained that she elected not to use the medications out of concern about their side effects.

3

The other reason that the Debtor cites for an inability to work is that she is a single parent to her nine year old son.  The Debtor testified that she must be present in the morning to get her son off to school and at the end of the school day for when he returns.  She testified that her mother is able to help with child care from time to time and helped when the Debtor was working.

**ANALYSIS**

A bankruptcy discharge does not include student loan debt "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents."  11 U.S.C. § 523(a)(8).  The burden of proof lies with the debtor on the issue of undue hardship.   *Nash v. Connecticut Student Loan Foundation (In re Nash)*, 446 F.3d 188, 190-91 (1st Cir. 2006).  "Proof of undue hardship is generally found only in 'truly exceptional circumstances, such as illness or the existence of an unusually large number of dependents.'" *ECMC v. Bronsdon (In re Bronsdon)*, 421 B.R. 27, 32 (D. Mass. 2009), citing *T.I. Fed. Credit Union v. DelBonis*, 72 F.3d 921, 927 (1st Cir. 1995).

"Undue hardship" is not defined in the Bankruptcy Code.  The courts have applied one of two approaches to applying it: either the totality of the circumstances approach or the *Brunner* test.  *See Brunner v. New York State Higher Educ. Serv. Corp.,* 831 F.2d 395 (2d Cir.1987).  The only significant difference between these is that under *Brunner*, the debtor must establish that she made a good faith effort to repay the educational loans at issue.  When applying the totality of the circumstances test, the debtor's efforts to repay may be considered, but evidence of those efforts (or lack thereof) is not necessarily dispositive. *Educational Credit Management Corp. v. Kelly*, 312 B.R. 200, 206-207 (B.A.P. 1st Cir. 2004).

The Bankruptcy Appellate Panel for the First Circuit articulated the totality of the circumstances test as follows:

> The "totality of the circumstances" analysis requires a debtor to

4

> prove by a preponderance of evidence that (1) his past, present, and reasonably reliable future financial resources; (2) his and his dependents' reasonably necessary living expenses; and (3) other relevant facts or circumstances unique to the case, prevent him from paying the student loans in question while still maintaining a minimal standard of living, even when aided by a discharge of other pre-petition debts.

*Lorenz v. Am. Educ. Servs.*, 337 B.R. 423, 430 (B.A.P. 1st Cir.2006).  Under either test, the initial focus is on the debtor's current and future ability to repay the student loans.  But the totality of the circumstances test allows the Court to consider the facts and circumstances unique to each case and to measure the impact of those facts and circumstances on the debtor's ability to pay now and in the future. While this inquiry would include the debtor's efforts to repay the loan, I am not persuaded that those efforts should rise to the level of a determinative factor.  I am satisfied that the "totality of the circumstances" test frames the inquiry most appropriately.

Applying that test to the matter before me, I find that the Debtor has not carried her burden of proving undue hardship.

The Debtor's education, particularly her certificate in medical assistance, qualifies her for employment in a variety of medical settings.  She has worked in three health centers and in a pharmacy as a medical assistant or a pharmacy assistant.  In each of those jobs, she was able to work part time or full time, ranging from twelve to forty hours per week, depending on the needs of the employer and her ability to work.  Thus, she has training, experience, and education that provide her with an ability to earn money needed to support herself and her son.  She has not shown that the income available from this work, especially as she gains experience, would be insufficient to permit her to pay down her student loan over time.  The only real question is whether, given her illness, she will be able to work.

With respect to her illness, the Debtor's testimony, as buttressed by that of Dr. Felsenstein, makes it clear that the future of her illness and its affect on her ability to work is highly uncertain and cannot be forecast with any confidence.  Her illness is quite real and, since

5

she left her last job in 2006, has been truly debilitating.  However, as Dr. Felsenstein explained, her disorder, and the attendant disability, can wax and wane, and the continuation of symptoms over the long term cannot be predicted with certainty.  It is possible that the Debtor's symptoms will persist at their present, disabling severity for the duration of her working years.  If this could be known with some confidence, I would be prepared to find that her illness makes this a case of undue hardship, as her present level of income, consisting entirely of public assistance, does not permit repayment of debt without sacrifice of necessities.  On the other hand, it is possible as well that her symptoms will, within a year or five or ten, be alleviated enough to permit her to work enough to support herself and her son and to make payments on her student loan.  The Debtor is young and has many potential years of work ahead of her.  Dr. Felsenstein testified that patients do fully recover from CFS/ME, and she could not rule out that the Debtor would recover.

   Even if the Debtor's illness is never cured, the illness is one that "waxes and wanes," which I understand to mean that there are times that the Debtor can work, at least part time.  Of course, employment of many kinds, including of the kind the Debtor is qualified for, requires that she be able to work on a consistent basis; employers are not so interested in employees who can work only on their "good" days, especially where these are irregular and unpredictable.  Short of full recovery, certain drug therapies have alleviated the symptoms of the illness and made it possible for certain sufferers to work, at least part time.  The Debtor has not yet tested those drug therapies to gauge their impact on her ability to work.  For appropriate reasons having to do with the side effects of the medications, she has been reluctant to do so.  However, it remains possible that changes in the nature and severity of her symptoms, in combination with drug therapies that are appropriate to those symptoms and palatable to her, will make it possible for her to work with the necessary regularity, at least part time, notwithstanding the illness.

   In summary, the Debtor has established that she is at present unable to work and that

this disability is of long duration and, as she has been afflicted with this illness now already for over four years, probably will continue for some uncertain period into the future; but, by virtue of the nature of her illness, she has not established that she will not at some point in the future be physically able to work and to pay back her student loans while supporting herself and her son without undue hardship.  The Court of Appeals for the First Circuit has stated that a showing of undue hardship "requires the debtor to demonstrate that her disability will prevent her from working *for the foreseeable future*." *In re Nash*, 446 F.3d at 190-91 (emphasis added).  In other words, a debtor must show not only that the condition presenting the undue hardship is present now but that it will continue.  In view of the present and indefinitely continuing hardship, one might legitimately ask how far into the future one must be able to see in order to permit a finding of undue hardship.  However, in view of the availability to the debtor of certain repayment programs, I need not address that question here.

This brings me to the William D. Ford Federal Direct Repayment Loan Program (the "Ford Program"), including the Income Contingent Repayment Plan and the Income-Based Repayment Plan that are available as part of the Ford Program, and to the Federal 2009 HHS Poverty Guidelines (collectively, the "Federal Repayment Programs").  The Lender has introduced evidence of the Federal Repayment Programs and has asked, without objection, that I take judicial notice of them, which I have agreed to do.  *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed[.]").  Under these programs, when a student loan obligor is receiving limited income, her obligation to repay is adjusted to a level affordable to her, so that she must pay only as income permits.  Lender's counsel stated at the trial that these programs would be made available to the Debtor, and the Debtor testified that she would take advantage of these programs in the event her student loans are not discharged.[1]  She has not yet applied for their benefits, having elected to seek first a discharge under § 523(a)(8).

---

[1] ECMC has not explained how a student loan debtor qualifies for relief under the Ford Program and its various options.

Under the Federal Repayment Programs, a debtor's obligation to repay her loan would, according to ECMC's representations, be adjusted according to her ability to pay in any given period, including, for a person having annual income of less than $14,570 for a family of two, such as the Debtor, a reduction to no payments at all.  Under these programs, the Debtor would be eligible for these reductions of her payment obligation during the persistence of her disability.  If at the end of the twenty-five year term of the program any balance remained owing, the balance would be administratively discharged.  Given the availability of these programs, it appears that nondischarge of the loan likely would not impose on the Debtor a payment obligation that is greater than her ability to pay during periods of continuing disability, and the Court therefore concludes that the continuance of her medical disability for the indefinite future has not been shown to constitute an undue hardship.

      The Debtor also contends that repayment of her student loan constitutes an undue hardship for the further reasons that she is a single parent and the only source of income for her son, and her income, even before she became ill, was insufficient to permit her to repay her loans.[2]  I reject this argument for several reasons.  First, "[t]he hardship alleged . . . must be undue and attributable to truly exceptional circumstances, such as illness or the existence of an unusually large number of dependents."  *TI Federal Credit Union v. DelBonis*, 72 F.3d at 927.  Here the Debtor does not rely on her illness, which has been dealt with separately, but merely on the insufficiency of the income she earned when she was well to the needs of her small family, especially in combination with her student loan obligations.  This disproportion posed a hardship, to be sure, but not one that is exceptional or undue within the meaning of § 523(a)(8).  Second, as set forth above, the debtor appears to be eligible for income-based repayment relief under the Ford Program, and this relief is based in part on the size of the debtor's family.  Third,

---

    [2] The Debtor's argument here is that, *even apart from her illness*, repayment of the loan would constitute an undue hardship.  Accordingly, in addressing this argument, the court will assume that the illness is not a factor and no longer impairs her ability to earn.

the fact that she is raising a child, even as a single parent, is not the kind of exceptional circumstance that renders a hardship undue. At present and over most of his minority, her son will require her time and care and constitute a limitation on her ability to earn. Still, even now, he does not require all of her time, and depending on her child-care options, her need to care for him may not even rule out full-time employment. As her son grows older, however, she will have more freedom from child-care obligations and time to work; and he will eventually become independent, freeing up more of her income for loan repayment. Her child is thus not a permanent obstacle to work and repayment. See *In re Savage*, 311 B.R. 835 (B.A.P. 1st Cir. 2004) (reversing finding of undue hardship because, in part, longer work hours will become more practical as debtor's son grows older); *In re Smith*, 328 B.R. 605 (B.A.P. 1st Cir. 2005) (debtors not entitled to undue hardship determination despite having child with special medical needs that necessitate limited work hours). Fourth, the debtor's income increased over the two years of her work experience, and it will likely increase further as she gains experience. For these reasons, I am satisfied that Debtor's limited income and her child-care obligations do not constitute an undue hardship

**CONCLUSION**

In sum, under the totality of the circumstances, I find that the Debtor has failed to demonstrate, by a preponderance of the evidence, that excepting her student loans from discharge would impose upon her and her son an undue hardship. Judgment will enter dismissing her complaint. However, insofar as this ruling is based in significant part on the availability of relief under the Ford Program and that availability is dependent on administrative procedures and decisions that have not yet occurred, this judgment is without prejudice to

9

reconsideration should the Debtor's disability continue and the promise of relief under the Ford Program prove illusory.

Date: June 23, 2010

_____
Frank J. Bailey
United States Bankruptcy Judge